HELEN FRAZIER, RESPONDENT, v. MACE-RYER COMPANY, A CORPORATION, APPELLANT.—114 S. W. (2d) 150.

Kansas City Court of Appeals.   January 31, 1938.

*Duvaul P. Strother, Rufus A. Bailey, Thomas F. Wells* and *John L. Kirkpatrick* for respondent.

*Madden, Freeman & Madden* for appellant.

SHAIN, P. J.—This is an action for damages for alleged personal injuries that the plaintiff alleges she received in a fall on the floor in the defendant's retail store at 1120-22 Grand Avenue, Kansas City, Jackson County, Missouri. It is alleged by plaintiff that the fall on the floor occurred about 4 P. M., Nov. 5, 1935, while plaintiff

was in said store for the purpose of inspection and purchase of merchandise.

The negligence charge, upon which the cause was tried in the circuit court, is expressed in plaintiff's petition as follows:

"Plaintiff further states that each and all of her said injuries were directly and proximately caused by the negligence and carelessness of the defendant, its agents, servants and employes in this, to-wit: that defendant was negligent in allowing and permitting the floor of its showroom to become slick and slippery in spots because of a floor dressing of a greasy and oily nature having been placed upon and spread over the surface of the floor, which rendered said floor unsafe and dangerous for plaintiff and others walking thereupon, which slick and slippery, unsafe and dangerous condition of said floor was well known to the defendant, or by the exercise of ordinary care and caution could have been known to the defendant in sufficient time to have been remedied by eliminating a sufficient portion of said floor dressing, thereby eliminating said slick and slippery, unsafe and dangerous condition and have thereby avoided plaintiff's injuries, all of which defendant, its agents, servants and employes negligently and carelessly failed to do."

The defendant's answer, after pleading by way of general denial, contains the following:

"Further answering, defendant states that if the plaintiff was injured at the time and place mentioned in the plaintiff's petition, which defendant denies, said injury was caused and/or contributed to by the plaintiff's own negligence in failing to exercise ordinary care for her own safety, and was further caused and/or contributed to by the plaintiff's own negligence in failing to use her sense of sight and her other senses in view of all the facts and circumstances then and there existing."

Plaintiff filed a general denial to the allegation of defendant's answer.

Trial was before jury and verdict was for plaintiff in the sum of $1,000.00.

Judgment was duly had and entered for $1,000.00 and defendant duly appealed.

We will continue to refer to appellant as defendant, and respondent as plaintiff.

The defendant, in its statement in brief filed, very clearly sets forth its contention and clearly sets forth the questions we are called upon to review.

"The sole question presented is the sufficiency of the evidence to warrant the submission of the cause to the jury or to warrant the giving of Instruction No. 1, an instruction given on behalf of the plaintiff."

We have set forth above the negligence charged in plaintiff's petition and conclude that the plaintiff has plead facts that, if true, present a statement of a cause of action against defendant. In determining the question of sufficiency of evidence to present an issue for the jury, we consider the evidence in its most favorable light to plaintiff and, if there is shown substantial evidence in support of the allegations of negligence, we are bound to the conclusion that plaintiff met the requirements of a submissible case.

The evidence seems to be conclusively to the effect that plaintiff, while walking on the floor, slipped and fell. Plaintiff testified that in her fall she made a V-shaped mark on the floor where she fell.

As to the *res*, the following questions and answers appear in plaintiff's testimony, to-wit:

"Q. By the Court: Now, he is talking about at the instant time, right then and there. Do you know what it means? A. Yes, sir.

"Q. Now, you started to say 'after something'; now, leave those 'afters' out. What he wants to know is what happened immediately when you got up. Now, if you said something about it or somebody said something to you there at the store, what was it? A. Well, she called the attention of the man at the place on the floor.

"Q. Who did? A. My cousin.

"Q. When? Right immediately? A. Yes, sir; after I got up.

"Q. (By Mr. Bailey) I will ask you if at this time whether or not the man that she talked to at this time immediately afterwards, whether or not he made any reply? . . .

"A. Well, my cousin pointed to the place on the floor and remarked, 'that there was a slick spot on the floor.'

"A. And the man said—

"Q. (By the Court) What man? A. Some man; I did not know him.

"Q. (By Mr. Bailey) Was the man in the store? A. Yes, sir.

"Q. Standing right there? A. Yes, sir.

"Q. Would you know that man if you would see him? A. Well, I think I would. He is the one that helped me up.

"Q. He helped you to your feet? A. Yes, sir.

"Q. And then what happened? Well, just a moment, did this man, did he make any reply? A. Yes.

"The Court: Go ahead, Mrs. Frazier.

"A. Well, he said, 'yes; it looked like it.'

"Q. (By the Court) What? A. 'It looked like it,' and that is all he said, and they helped me into the office. . . .

"Q. Now, then, I will ask you, Mrs. Frazier, to describe your fall, if you can from your best recollection, a little more about the fall, just how your feet slipped and how you landed and whether or not you landed one way or the other, and just describe that the best way

you can. A. Well, as I slipped, my right foot went down—went down—and my right knee hit on the floor first and as I jerked myself back, I jerked and hit my left knee down too, not as hard as the right one."

As to the condition of the floor, the following questions and answers appear in plaintiff's testimony, to-wit:

"Q. (By Mr. Bailey) All right; now, then can you describe the condition of the floor immediately surrounding the particular spot or mark that you have just described to the jury? In other words, in your best words just tell what the floor looked like, if you can. A. Well, it was a linoleum floor and the spot where the mark was, was pretty good size on the floor; it looked like it handn't had very much rubbing down; it hadn't had much work on; just a spot on the floor. It looked like a pretty good size and it hadn't been worked on."

A Mrs. Sawyer, who was with the plaintiff at the time of the fall, was called as a witness by plaintiff. In the course of the examination of Mrs. Sawyer, the following questions and answers appear, to-wit:

"Q. Now describe as best you can just exactly what happened. A. Well, she was carrying her baby and I was leading the little boy behind her, and as she went around the corner, just like she was going around this business here (indicating) she came around the corner and I hadn't hardly gotten around the corner, when all of a sudden she was on the floor and I made a grab at her to try to stop her from falling and she had twisted herself to keep from hitting the child's head on these stoves which were there, and the child's head struck the stove anyhow and she went down on her knee on the floor.

"Q. (By Mr. Bailey) Now, Mrs. Sawyer, I will ask you whether or not immediately after the fall whether or not anything was said by any person in the store, immediately after the fall? A. Yes; this gentleman that came up to assist—

. . . . .

"A. Well, he looked at the floor to see what the girl had fallen on and he looked at the floor and I said, 'it looks as though something was on the floor—'

"Q. I will ask you whether or not there was any conversation at that time, immediately after the accident by you and between any other person standing there, immediately after the accident? A. Yes.

"Q. What was that conversation?

"Mr. Burke: I Object to that now as calling for hearsay and for all the other reasons stated.

"The Court: Objection overruled.

"To which ruling and action of the court the defendant at the time duly excepted and still excepts.

"A. I saw this mark on the floor, where her heel had slipped and I called this man's attention to the mark on the floor and he said, 'that the floor had had some sort of a wax or polish or preservative, put on the floor prior to the holidays,' and then he took her name and address, and that was all there was to it."

The plaintiff alleges that the floor became "slick and slippery in spots because of a floor dressing of a greasy and oily nature having been placed upon and spread over the surface of the floor."

There is evidence "that there was a slick spot on the floor." Further, that "it looked like a pretty good size and it hadn't been worked on." Further, the evidence discloses that one person who was present and who took the name and address of plaintiff said, "that the floor had had some sort of a wax or polish or preservative put on the floor prior to the holidays."

The defendant, at the close of plaintiff's evidence, offered an instruction in the nature of a demurrer. Said instruction being refused, the defendant offered no witnesses on its behalf and the cause was submitted to the jury over the objection of defendant and instruction No. 1, complained of, was approved and given.

The defendant contends that the evidence does not disclose a condition that places liability on defendant. Defendant, in support of its contention, cites and urges application of Ilgenfritz v. Missouri Power and Light Company, 101 S. W. (2d), 1. c. 727.

The evidence in the Ilgenfritz case discloses that the floor, upon which the plaintiff slipped and fell, had a very slight incline and was covered with linoleum that had been waxed and rubbed down or polished and that the floor was not any more slick nor that any greater amount of polish had been used than was usual.

The facts of the Ilgenfritz case differ from the facts in evidence in the case at bar in this respect: The floor involved in the Ilgenfritz case was, as to the whole floor, uniform as to its polished or slick condition. In the case at bar there is evidence that a different condition, as to slippery conditions, existed at the place of the accident than existed on other parts of the floor. In other words, that a spot existed where plaintiff fell that appeared to have been covered with polishing material that had not been worked down.

The question in the Ilgenfritz case centered upon the declaration of the court that the only question as to negligence rested upon the fact as to whether or not the waxing of the floor was negligence, and the court (in the Ilgenfritz case) held that the waxing of such floor was not negligent and, therefore, plaintiff could not recover.

The defendant cites a number of foreign cases in support of its contention. We conclude that the law in Missouri touching the issue involved has been sufficiently defined, so we refrain from comment as to these foreign cases.

Plaintiff cites Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278.

The above case but declares the well established law that the owner of premises is not liable if the defect is as obvious to the invitee as it is to the owner.

The law has become well established in this State to the effect that owners and occupants of business houses, where people are invited for trade, have a right to have their floors waxed and polished, and only owe a duty of maintaining the floor in a reasonably safe condition for the purpose for which it is used. [Savona v. May Dept. Stores, Co., 71 S. W. (2d) 17.]

However, floors or stairways may be so highly polished as to be dangerous for use by the public and thereby create a liability upon the one who invites its use. [Asbury v. Fidelity Nat'l Bank & Trust Co., 100 S. W. (2d) 946.]

As to the case at bar, there appears to be no evidence to bring the issue in the case within the rule of the Asbury case.

The distinguishing feature in the case at bar is the fact that when evidence most favorable to plaintiff is considered, we are confronted with the evidence that the floor in defendant's store was not uniform as to its surface, in that an entirely different condition existed at the (place of the accident) where plaintiff slipped and fell. In other words, at the place of the accident there was a spot, and from the evidence an inference may be drawn that the wax on the floor at this particular spot had not been rubbed down or polished, thus presenting a different or changed condition from that which existed on the other parts of the floor where plaintiff had been walking.

We conclude that the evidence of the above tenor and effect is sufficient to make a submissible case for the jury and therefore must conclude that the court did not commit error in refusing defendant's peremptory instruction in the nature of a demurrer.

As to Instruction No. 1, complained of by defendant, the only contention made is that there was no evidence to support the matters submitted to the jury in said instruction.

We have concluded that the petition stated a cause of action and we having concluded that there is evidence supporting the allegations of the facts plead.

Instruction No. 1, we conclude, fairly presents the material facts at issue, and we find no error in said instruction.

Based upon our conclusions, as stated above, the judgment is affirmed.

All concur.