SIMON STOLL, RESPONDENT, v. FIRST NATIONAL BANK OF INDEPENDENCE, A CORPORATION, APPELLANT.—132 S. W. (2d) 676.

Kansas City Court of Appeals. July 3, 1939.

*Ryland, Stinson, Mag & Thomson* and *Wright Conrad* for appellant.

*Cowgill & Popham, Guy W. Green, Jr.,* and *Elmer W. Ahmann* for respondent.

SPERRY, C.—Simon Stoll, plaintiff, sued First National Bank of Independence, defendant, because of the loss of services and medical expense occasioned by injuries sustained by plaintiff's wife when she fell in defendant's bank building. Judgment was for plaintiff and defendant appeals. The parties will be referred to herein as plaintiff and defendant.

Plaintiff moves dismissal of the appeal because of the alleged violation of our rule requiring appellant to file "a clear and concise statement of the case without argument, reference to issues of law or repetition of testimony of witness." In this connection it is urged, first, that defendant has made misleading statements regarding the facts and has stated the facts from the standpoint of defendant's evidence. We do not find this charge to be substantiated.

It is next urged that the statement makes no reference to the date and term when the judgment was rendered, the motion for new trial, the action of the court hereon, the application for allowance of appeal or the time and term at which application was made and appeal allowed. The statement contains the following:

"This is an appeal by the First National Bank of Independence, Missouri, (Appellant) from a judgment obtained by the plaintiff, (Respondent) Simon Stoll, in the Circuit Court of Jackson County, Missouri, at Kansas City, in the sum of $3500 for the loss of society, companionship, services and expenses incurred by him, etc., on account of personal injuries sustained by his wife, Eliza Stoll, as a result of a fall on defendant's premises."

No claim is made that this court does not have jurisdiction and in view of that fact and the further fact that, except for dates, virtually all jurisdictional facts appear in the above statement, we hold that,

in this respect, the statement substantially complies with the rule. It is not deficiant to anything like the extent as was the statement in McDonnell v. Hawkeye Life Insurance Company, 84 S. W. (2d) 387, referred to by plaintiff, and certainly unlike that discussed in Roberts v. Hogan, 269 S. W. 652, upon which the ruling in the Hawkeye case is based.

After rendering a reasonably fair statement of the case defendant, at the conclusion thereof, briefly narrates the gist of the petition with short quotations therefrom, states that the answer was a general denial, and then sets out, *verbatim*, two of plaintiff's five given instructions, one given "modified" instruction, and one of defendant's refused instructions. There was no necessity whatever for these matters to be included in a statement. However, they appear at the end of the statement in chief and no argument is offered in connection therewith. We think such matters should be treated as surplusage rather than held to render the statement fatally defective.

It is next said that the assignments of errors are in language too broad and general and should not be reviewed for that reason. The rule is that if the errors complained of are specifically set forth either under assignments or under "Points and Authorities" in the brief, and the reasons why the error is claimed are there sufficiently definite and specific the requirements of our rule are met. [Schell v. F. E. Ransom Coal & Grain Company, 79 S. W. (2d) 543, l. c. 545.] We think that under "Points and Authorities" defendant has properly presented, under his point one, the question of the alleged error on the part of the trial court in refusing to sustain a demurrer to the evidence offered at the close of the whole case.

The purpose of our rules is to assist the court in the speedy disposition of cases coming before it, not to provide a method by which we may refuse to decide appeals on their merits. We think the statement and brief here are sufficient to advise the court and adverse counsel of the nature of the case and of the errors complained of, although it is surely inartifically drawn. [Round Prairie Bank of Fillmore v. Downey, 64 S. W. (2d) 701, l. c. 703.] The motion to dismiss should be overruled.

Mrs. Stoll was a customer of defendant's bank and had been a regular visitor there for some two and one-half or three years prior to the injury. Defendant's banking house was about six years old. Customers, including Mrs. Stoll, entered from the street into a lobby from which two steps led upward onto the main floor of the bank. The steps were about thirteen feet wide and they, as well as the floor at the top, were of honed Tennessee marble. Plaintiff's expert witnesses testified that Tennessee marble is one of the hardest of domestic marbles. It is mined in chunks and sawed into slabs of desired thickness. It is next smoothed and ground with steel disks. Next, it is rubbed on a sand bed, and then with grit. The next process is to hone it. This gives

it a smooth hard finish, not a polished or slick finish, and is known as a "hone finish." If further polishing is desired it is given a glossy, polished finish with oxalic acid. These witnesses also testified that Tennessee honed marble is customarily used in this vicinity for floors and stair steps. The evidence was that, when this marble is properly hone finished, further honing will not make it slicker or more polished but will merely continue to grind away the marble. The floor and steps were clean. It is not claimed that Mrs. Stoll was caused to fall because of any foreign substance being thereon.

Mrs. Stoll testified that she fell on a "diamond" of white marble, "about a foot" back from the edge of the top step, just as she was leaving the main floor of the bank and about to take the first step down at the entrance. The two lower steps, below the level of the floor, were from eleven to twelve inches in width from the nose to the rise. The top step, or tread, was merely a continuation of the main floor, of the same material, finish and level as was the remainder of the floor, except, Mrs. Stoll testified, the "diamond" upon which she slipped and fell was harder and slicker than were other parts of the floor; but all of plaintiff's expert evidence was to the effect that the entire floor, as well as the steps, consisted of honed Tennessee marble, and that such marble can only be honed to a certain degree of smoothness and that any additional polish must be added by a new process, as above mentioned. It is not claimed that any such additional process was used; and Mrs. Stoll said that the floor was clean and free of any foreign matter that might render it slippery for that reason. From the expert evidence offered by plaintiff it would be purely speculative to say whether it had been rendered smoother or rougher by reason of usage. The testimony was to the effect that marble would be polished by the soles of shoes of people using the floor if the soles were sewn and did not have sand or dirt adhering thereto; and if sand or dirt adhered to shoes it would roughen the surface of the floor. There was evidence to the effect that a number of persons had slipped, but not fallen, at about the spot where Mrs. Stoll fell; but it is also in evidence from the same witnesses' testimony that defendant was never informed of such accidents and there is no evidence that it knew of same. However, such evidence is some evidence, at least, that it was dangerous (District of Columbia v. Armes, 107 U. S. 519), and indicated slickness (Phelps v. Montgomery Ward & Co., 107 S. W. (2d) 939, l. c. 942).

It is defendant's position that its demurrer to the evidence should have been sustained on the grounds that, since Mrs. Stoll's status was not that of an insured but was that of an invitee, whatever the condition of the floor, or steps, may have been as to being slick or slippery, such was not due to any unusual condition not ordinarily existing there but was due entirely to the smoothness of the honed Tennessee marble, and that she was as fully informed concerning the condition of the floor as was defendant; that defendant's liability to its invitee is *either*

to maintain its premises in a reasonably safe condition *or* to warn her of a danger known to it and unknown to her; and that it breached no duty in failing to warn one who already knew of the existing condition.

The Supreme Court said, in Vogt v. Wurmb, 300 S. W. 278, l. c. 279:

"On the facts of this case we have to consider, not the duty which a carrier owes to a passenger, or an employer to an employee, or a municipality to the traveler on its thoroughfares, but that which the owner or occupier of land owes to his invitee. With respect to this latter duty and the liability growing out of its breach, the well-settled rule is this: The owner of lands is liable in damages to those coming thereon, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, *which is known to him and not to them, and which he has suffered negligently to exist, and of which they have received no notice.*" (Italics ours.)

In Main v. Lehman, 243 S. W. 91, l. c. 94, the Supreme Court quoted with approval the following:

"The duty and liability of the proprietor of business premises to his customers in such cases are stated by Justice Gray in a Massachusetts case as follows: 'The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, *which is known to him and not to them, and which he has negligently suffered to exist and has given* them no notice of.'"

In the recent case of Alexander v. Crotchett, 124 S. W. (2d) 534, l. c. 537, this court said:

"We think that is correct and that defendant's liability is measured by its duty to an invitee. [Gilliland v. Bondurant, 332 Mo. 881, 59 S. W. (2d) 679, l. c. 688.] It owed him a duty to warn him of a danger *known to it and unknown to plaintiff,* . . . [Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723, l. c. 725.'"] (Italics ours.)

The question here to be determined is: Did Mrs. Stoll known beforehand of the smooth, slick, slippery, condition of the floor? The evidence on the question comes from Mrs. Stoll herself, as follows:

"Q. How long had you been a customer of this defendant, First National Bank of Independence, Missouri? A. Off and on for a good many years, before the new building was—we were a customer then at that time for a long time.

"Q. And the new building, I believe, had been in something like six years? A. Yes, sir." . . .

"Q. Just tell us at what gait and how you were handling yourself when you got on top of this third step, or this floor level that we are talking about. A. I was walking slowly and carefully. I knew the floor

was smooth, and I realized that I would walk stiff-legged, and I thought by that I was taking care of myself.

"Q. Did you walk stiff-legged? A. Yes, sir." . . .

"A. *I hadn't thought of it being dangerous. I knew it was very smooth and slick, and careful I was always in coming over that.* . . .

"Q. *Well, you had been there a number of times before this?* A. Yes.

"Q. *Had you always gone in the same door?* A. Yes.

"Q. *And would come out over these same steps?* A. Yes.

"Q. And I believe you state you had noticed on these previous occisions that this was smooth, shiny marble? A. I had noticed how smooth and shiny it was, as you say.

"Q. Yes. A. But I did not think of it being so.

"Q. Now, just a minute. I just want what you observed. We will come to that other later. *As I understand, you had observed that it was shiny and smooth, and, you say, slippery?* A. *Well, it was what you would say slick, I suppose.*

"Q. Slick? A. Smooth or slick.

"Q. *And you had observed that on these other occasions and had walked carefully?* A. *Always careful, of course.*

"Q. *Because of the fact that the bank floor and these steps were smooth and shiny and slick?* A. *Yes, I was always careful, just like I would be*—I didn't know it was dangerous. I didn't think of it being dangerous or I wouldn't have been there.

"Q. *Well, I mean, though, that you did know that it was slick?* A. *Slick, yes, sir.*

"Q. Did you tell the court and jury that it was so slick you walked with exceptional care? A. I always was careful on slick—

"Q. Well, I believe you described it as walking stiff-legged. Was that because of this slick condition? A. I always did when I thought that a floor was slick or unusually smooth.

"Q. That was to avoid falling? A. Well, naturally that was just to save, I think, any risk of anything.

"Q. *Were you walking that way on this day?* A. *Yes, sir.*

"Q. *And were doing that because of your having previously seen the condition of this floor?* A. *Yes, I was* always careful.

"Q. And I mean you walked carefully that day because of having known of this? A. Always did.

"Q. *Of that floor being that way?* A. *Yes.*

"Q. You had noticed that; you were on the diamond that day? A. Yes.

"Q. And you had noticed that they were glossy and slick looking? A. Yes. . . .

"Q. Were you looking at the floor at the time? A. I always do when I am walking.

"Q. And you had observed this floor as you approached this step? A. I hadn't thought anything specially about it. I was careful, as I say.

"Q. Were you looking at the floor? A. Always."

"Q. Of course, you know that you were on the diamond; you must have seen that before you fell, because you were down in the lobby afterwards, weren't you? A. Yes.

"Q. So I understand it, you were walking along there carefully and observing the floor, and you noticed you were on this diamond? A. Not paricularly.

"Q. Not particularly? A. It was slick, smooth."

"Q. That is what I mean, you were watching the floor? A. Yes.

"Q. And you saw about what point you were on the diamond? A. Just about.

"Q. Yes, which you have described as being slick? A. Yes.

"Q. And slippery. A. Yes.

"Q. *And which you had noticed before, is that correct?* A. *Yes.*

"Q. And that floor was clean that day, was it? A. Yes.

"Q. Just the same as you had always seen it? A. So far as I knew. I didn't know of any dirt being there.

"Q. *I mean the floor appeared like it always had?* A. *Yes.*

"Q. Well, then you could see it that day? A. Yes.

"Q. And it appeared just as always? A. Yes.

"Q. As you went in and as you came out, you had walked the length of the bank room there? A. Yes.

"Q. That day you had gone in, had you gone up over this same step? A. No.

"Q. I mean up over the same stairs? A. Yes, that is the only entrance.

"Q. That is what I mean. You had gone over that going in? A. Yes.

"Q. And you had observed these steps as you went in? A. Always did.

"Q. And did you on that day? A. I always did.

"Q. *And the whole floor had this slick, glassy, glossy appearance?* A. *I guess so.*

"Q. *Well, do you know?* A. *Yes, sir.*

"Q. *Did it; do you recall seeing it?* A. *Yes.*

"Q. *And that is also the condition you noticed coming out?* A. Yes.

"Q. I mean as far as you could tell, it appeared like you see in public buildings and places? A. Well, no, it was smoother. It seemed to me it was smoother than the average, and it was at this particular point in those diamonds. They were more highly polished or smoother or slicker or whatever you might say.

"Q. I believe you have said, Mrs. Stoll, that as you approached this stairway, you were walking stiff-legged? A. Yes.

"Q. Why were you walking stiff-legged? A. Always did that on a—even a waxed floor in a home, just to be careful.

"Q. Didn't you think you might slip? A. I wasn't thinking of slipping. I wasn't thinking of the floor being slick like that, but with care; always on a waxed floor in our homes, I always walked carefully.

"Q. This was like a waxed floor in a home? A. Well, I don't say it was like wax. I just knew it was smooth and I knew that; I know that you need to be careful on smooth floors like that."

From the above evidence it is clear that Mrs. Stoll knew, when she first entered the bank that day, that the entire floor was unusually smooth, slick and slippery and she walked stiff-legged as she would if she were walking on a waxed floor in a home. At the time she fell she was as fully advised of the condition of the floor and steps, from her previous observation, on that very day as she would have been had defendant called it to her attention and cautioned her to walk carefully. As was said by the Supreme Court in Paubel v. Hitz, 96 S. W. (2d) 369, l. c. 373, 374:

"Whatever danger existed was not only obvious but actually known and appreciated by plaintiff. . . . Had he been warned of the slippery condition of the runway, no greater information would have been imparted to him than that which he admittedly possessed. A warning importing notice of the condition of the runway would have discharged defendant's legal obligation. Therefore, whatever risk existed incident to passage over the runway was voluntarily incurred by plaintiff—*volenti non fit injuria*—and defendant breached no legal obligation owed plaintiff."

Plaintiff cites and urges a large number of cases which he claims are analogous and controlling. There are so many cases in this State involving the legal obligation owed by a land owner or occupier to an invitee and in which the applicable principles have been applied to cases of this general character that volumes might be consumed in discussing, applying, and differentiating them. However, since plaintiff stresses the applicability of certain cases we will discuss some of those urged. He contends that the facts in Asbury v. Fidelity National Bank & Trust Company, 100 S. W. (2d) 946, are not distinguishable from the facts of the case at bar, and that this court, in the Asbury case, sustained a judgment under facts there present. An examination of the facts upon which Commissioner CAMPBELL predicated liability discloses the following, on page 948:

"There was substantial evidence warranting the jury in finding that the steps 'has a polish,' were slick, slippery, and unsafe; . . .; that the steps had a dull finish, did not appear to be slippery or unsafe; *that the unsafe condition of the steps was not obvious to plaintiff's wife or known to her until after she fell,* . . ."

In the case at bar plaintiff's wife always walked stiff-legged when in defendant's bank because she had observed the smooth, slick, slippery, glossy polished appearance and condition of the floor, and was so walking and looking at the floor at the time she fell. We think there is a material distinction between the facts here and those in the Asbury case relative to the previous knowledge possessed by the injured party.

Plaintiff also relies strongly on the opinion in the case of Frazier v. Mace-Ryer Company, 114 S. W. (2d) 150, handed down by this court. There the linoleum floor had been dressed with a preparation and the spot where plaintiff fell had not been rubbed down so as to render the whole floor uniform as to its condition. Judge Shain differentiated the facts in the Frazier case from those in Ilgenfritz v. Missouri Power & Light Company, *supra*, on the grounds that the spot where Mrs. Frazier fell was slicker than the remainder of the floor, whereas, in the Ilgenfritz case the whole floor was uniform as to slickness. We think there is no substantial evidence here that the floor was slicker on the diamond, where plaintiff fell, than elsewhere, in view of the testimony of plaintiff's experts to the effect that Tennessee marble, of which *both* the floors and steps were made, is of a certain hardness; that it was *all* "honed;" that after it really becomes "honed marble" no amount of additional honing will increase its smoothness or slickness; and Mrs. Stoll's evidence to the effect that the entire floor and steps appeared to her to be equally smooth, slick, glossy, and slippery and that there was no foreign substance on the floor where she fell or elsewhere.

The case of Evans v. Sears, Roebuck & Company, 104 S. W. (2d), 1035, is also strongly urged by plaintiff as controlling here. There the injured lady entered defendant's store by way of a passageway then covered with snow. As she left the store she slipped and fell on this same passageway. *After she fell*, she, for the first time, discovered that there was ice under the coating of snow. The court said, l. c. 1039: "She did not see any ice upon the driveway on her way into defendant's store because it was covered with snow," and held that she was not guilty of contributory negligence, as a matter of law, for having assumed it to be safe to walk out of the store over the same route which she traveled in safety when she entered. It is to be noted that, in Paubel v. Hitz, *supra*, 372, the Supreme Court makes a distinction in these cases between "contributory negligence" and assumption of the risk. It is not defendant's contention that plaintiff was guilty of contributory negligence, but, rather, that defendant was guilty of no negligence since plaintiff already knew of the condition that, otherwise, defendant owed the duty of warning against. This distinction is made apparent in Ilgenfritz v. Missouri Power & Light Company, 101 S. W. (2d) 722, l. c. 728, where the Supreme Court said:

"However, whether she was careful or not, or whether her conduct was contributory negligence or not, makes no real difference, because

there is no evidence to show that defendant was guilty of any negligence, and, even if plaintiff was careful, defendant is only liable if it was negligent . . . To hold defendant liable here would make it liable as an insurer and not because of negligence.''

As we see the cases, and the facts in this case, if defendant is to be held liable it must be on the grounds that one who uses honed Tennessee marble for floors and steps will be held liable as an insurer. In view of the testimony of plaintiff's expert witnesses to the effect that such material, so treated, has been and is being used extensively in large modern offices and public buildings in Kansas City and Independence during the past twelve years, we are unwilling to so hold.

Plaintiff contended in the trial that she fell on the top step and that defendant was negligent in not having safety treads on the steps. Her evidence was that the edge of the diamond pattern, upon which she stood when she slipped, was on the same level with the main bank floor and about a foot from the edge of the stairs. The evidence as to the width of the lower steps was that they were from eleven to twelve inches from nose to rise. One of plaintiff's witnesses said the diamond was back on the bank floor. There was no substantial evidence to the effect that it is the custom in this community to place safety treads on inside steps, such as these, where there are only two or three steps, as here. Plaintiff's evidence was all to the effect that safety treads, such as are used when same are used at all in cases similar to this, extend back from the nose of the step some four to six inches. Consequently, plaintiff's own evidence conclusively demonstrates that the lack of safety treads, if same had been required by custom, did not cause or contribute to her injury. No custom requiring handrails in cases of inside steps of two or three, such as here, was shown; and Mrs. Stoll's evidence does not indicate the presence of one would have prevented her fall, considering her position and all of the circumstances existing at the time of the fall.

Plaintiff argues that Mrs. Stoll, in a part of her testimony, stated that she first discovered the slick, slippery condition of the floors and steps *after* she fell and while she was sitting in the lobby at the foot of the steps.

After testifying on the previous day as we have hereinbefore indicated by quoting from the transcript, she did, the next day, state the conclusion that she first learned of the slick condition of the steps and floor *after* she had fallen and was sitting in the lobby, (somewhat as in the case of the plaintiff in the Asbury case, *supra*). If we agree with plaintiff's contention, which is that her evidence on the second day establishes that her knowledge of the slick, slippery condition was first obtained after she fell, then the situation presented would be governed by the declaration contained in Adelsberger v. Sheehy, 332 Mo. 954, l. c. 961; 59 S. W. (2d) 644, where the court, speaking through FRANK, Judge, said:

"Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted."

We think the court there used the term "issue" in the sense of "fact."

However, we think that plaintiff's testimony, wherein she described in detail the condition of the floor, as she had learned of it on the many occasions when she visited the bank prior to the date of her injury; here testimony regarding her studied observation of the slick, slippery condition complained of as she walked up the steps and across the lobby while entering the bank on the day she fell; of her watching and observing the floors as she was approaching the steps on her way out on that occasion; of her noting the slick, hard character of the white diamond as she stood on it just prior to her fall; and of her testimony to the effect that she always, prior to the day in question, walked stiff-legged when she was in the bank, because of the slick, slippery condition of the steps and floor, and that she did so as she climbed the steps and crossed the lobby on entering the bank on this occasion, *and that she was doing so at the very time she fell,* (which was, of course, before she sat in the lobby at the foot of the steps), precludes our holding that her testimony which establishes her prior knowledge of the condition of the steps and floor was set at naught by what she stated on the occasion of her second appearance on the witness stand. Her testimony as hereinbefore set out, *verbatim,* is controlling, and was neither nullified nor contradicted, *in its entirety,* by the testimoney she gave on her second appearance as a witness; nor was there any attempt to explain away her testimony as first given.

Because of the error of the trial court in overruling defendant's demurrer to the evidence the judgment should be reversed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed. All concur.