Henrietta HOWARD, Appellant (Plaintiff),

v.

JOHNOFF RESTAURANT COMPANY, Incorporated, a Corporation, Respondent (Defendant).

No. 46131.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

Glennon T. Moran, Moran & Mason, St. Louis, Robert E. Morley, St. Louis, of counsel, for appellant.

Schwartz & James, Harry M. James, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondent.

VAN OSDOL, Commissioner.

Plaintiff sought recovery of $45,000 damages for personal injuries sustained when she fell on the dance-floor area of the artificially lighted main dining room of defendant's restaurant situate on Kingshighway in St. Louis. Plaintiff had alleged that the dining room was dimly lighted, and that the floor thereof was highly waxed and polished, unusually slippery, and not reasonably safe. Plaintiff's case was submitted to the jury on defendant's negligence in failing to warn plaintiff of the alleged unsafe condition. The jury returned a verdict for defendant. Plaintiff has appealed from the ensuing judgment.

Herein upon appeal, plaintiff-appellant contends the trial court erred in instructing the jury and in excluding evidence proffered by plaintiff. Defendant-respondent contends there was no error in instructing the jury, and no error in ruling on the admissibility of evidence. But defendant-respondent also raises the initial basic issue that the trial court erred in overruling defendant's motion for a directed verdict—it is said plaintiff failed to make out a submissible case. If no case was made for a jury, the errors complained of relating to instructions and to the admissibility of evidence (which evidence has no bearing upon the question of submissibility

in this case) were immaterial. O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248.

Plaintiff and three other elderly ladies were patrons of defendant's restaurant. Monthly, for several years, they had been going to the main dining room of the restaurant for lunch; and, having had lunch, these ladies were accustomed to remaining, with defendant's consent, at the luncheon table where they played bridge during the early afternoon.

On the day plaintiff was injured, dining tables were located in rows along the north, east and south sides of the main dining room; and on the west side there was a raised platform for musicians who played on Saturday evenings for the entertainment of defendant's patrons, especially for the entertainment of those patrons who wished to dance in the open area provided for dancing, which area was more centrally located in the room between the musicians' platform and the patrons seated at the dining tables. On other days of the week, patrons occasionally danced in the area provided for dancing, the music being supplied by a juke box. A ladies' toilet was located just beyond a small alcove off the southwest corner of the dining room.

On a Wednesday, the day plaintiff was injured, plaintiff and her three friends were seated at a table in the first or second row from the south wall, perhaps at the third table back from the dance floor. They had lunch and played bridge, and, when they were about to depart from the restaurant, plaintiff had occasion to go to the ladies' room. She moved somewhat to the northward and walked over the area set apart for dancing. She testified that it was not possible to go to the ladies' room without walking across the dance floor. She also testified that it was never "too light in there, you know, it's just like all club rooms, I guess a little dim * * *."

Plaintiff further testified, "Well, I started up to the ladies' room and I didn't notice the floor was too slippery or too slick when I went over there. I didn't no-

tice it too much, but when I came back, why I fell, and then I knew it was slippery, just shining like glass, and I could see the skid marks where I fell. * * * streaks" were where her foot slipped on the floor—"where my feet skidded, my one foot." She had never noticed the dance floor being as slick as it was that day. It looked like it had just been polished. Plaintiff's further testimony was that *"I wasn't looking down. I was looking straight ahead, but there could, there was something I stepped on because I made a mark with my foot, I skidded."* A witness for plaintiff testified that the same afternoon she had had occasion to go across the dance-floor area; she safely walked across the floor; she knew there was a dance floor there and walked across it very carefully.

Plaintiff was aware that the area where she fell was used for dancing, and she was familiar with the way the dining room was lighted.

Other witnesses for plaintiff testified that the floor of the area set aside for dancing was highly polished. One said it was "very, very, very highly polished." The floor of the dining room, other than the area where the dance floor was, "wasn't polished." One of these witnesses said you could tell the dance floor was highly polished by looking at it—when asked to explain what she meant by the expression "highly polished" the witness said, "Well, very, well, just like a looking glass to me. It was really that bright."

According to defendant's witnesses—defendant's president, its porter, and a patron —the floor throughout the dining room was of asphalt tile; the entire floor of the room was waxed with a well-known floor wax four times per year. On the evenings when a dance band was provided, the area provided for dancing was sprinkled with dance-floor wax. The dance-floor wax was put there to make it easier for dancers "to glide over the floor." The first thing each morning the whole of the floor of the dining room was swept, damp mopped, and buffed with a machine. An expert, witness for defendant, said that in order to remove dance-floor wax from a floor a chemical "stripper" must be used, "if they want to start all over again." Defendant had not used such a wax remover. As stated, defendant's evidence was that the floor was swept, mopped and buffed the first thing each day. This procedure would remove only a percentage of the dance-floor wax. "Now, if you take a floor and sprinkle wax on it to dance on, and each morning go over it with a buffer * * * (the floor) reaches a certain degree of smoothness and that's about it." Dancing makes a dance floor smoother. Buffing a waxed floor also makes the wax brighter—gives it a polished luster.

■ The liability of defendant, the proprietor of a restaurant, for a condition of its premises allegedly dangerous is to be determined by the law of possessor or occupier of land and invitee as applied to the facts of this case. We recognize the rule which puts upon the occupier or possessor of land or the proprietor of a restaurant or a store the duty to exercise ordinary care to keep his premises in a reasonably safe condition for an invitee's use. The basis of the defendant-proprietor's liability is defendant's superior knowledge of an unreasonable risk of harm of which the invitee does not or in the exercise of ordinary care should not know. Thus, such a defendant is not liable for injuries due to dangers which are obvious, or as well known to plaintiff as to defendant. And in such circumstances there is no duty to warn because the invitee has the information which would be conveyed by a warning. Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756. See also Stafford v. Fred Wolferman, Inc., Mo. Sup., 307 S.W.2d 468; Wattels v. Marre, Mo.Sup., 303 S.W.2d 9; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723.

Plaintiff-appellant reminds us that in the Ilgenfritz case this court recognized that it might be negligence to put floor wax in

certain places where people would step on it unexpectedly, as, for example, where they would step off an elevator or a moving stairway or in a dimly lighted room or corridor; and our attention is called to the fact that, in the instant case, witnesses spoke of the light in the dining room as being "dim." But we see that in the Ilgenfritz case, as well as in the instant case, the floors on which the respective plaintiffs fell were at places where a smooth waxed floor would be expected or could be plainly seen by looking. In the instant case, there is no substantiality in the characterization of the lighting facilities of the dining room as "dim" in the sense of being so obscuring in effect that the smooth, slick, highly polished aspect of the dance floor could not be readily seen. Plaintiff's witnesses, who looked, had readily seen the slick, shiny appearance of the floor, and plaintiff when she looked, after having fallen, saw it was shining like glass. According plaintiff's witnesses the clear meaning of their testimony, the smooth waxed surface of the dance floor was "shiningly" obvious. It was just like a looking glass. All should know of the hazard of slipping when walking on a smooth waxed surface. Ilgenfritz v. Missouri Power & Light Co., supra. And in our case we have a floor known by plaintiff to have been set apart for dancing, which floor one would expect to be of more than ordinary smoothness and of "gliding" waxed surface.

In the emphasized part of plaintiff's testimony, quoted supra, we have noted the plaintiff's allusion to the possibility that "something" she stepped on (some foreign substance?) was there on the waxed floor where she fell. Our study of the emphasized language convinces us that plaintiff was assuming there was "something" there merely because she had slipped or "skidded," and presently saw the mark made by her foot in slipping. There was no evidence tending to show the mark made by her foot when slipping was not such as would have been made in slipping on the properly waxed surface of a floor, and no

evidence tending to show the floor where plaintiff fell was more slippery than elsewhere and throughout the surface of the dance floor. It is true defendant's evidence showed dance-floor wax had not been removed by any chemical "stripper." But there was no evidence of an over-waxed or unevenly waxed condition reasonably necessitating stripping and starting "all over again."

Considering the evidence from the standpoint most favorable to plaintiff, there was no substantial evidence tending to show the floor of the dance area, considered as a dance floor, was improperly waxed, or that wax had excessively or unevenly accumulated on the surface in such a way or to such extent as to render the floor dangerous or not reasonably safe for one walking across it in taking the precautions, in the exercise of ordinary care, commensurate with the hazard of walking across the obviously smooth, slick, shiny surface of the area known to be a dance floor. Defendant should not be held as for negligence in failing to warn. Plaintiff had the information which would have been conveyed by a warning.

The instant case is to be distinguished on its facts from Frazier v. Mace-Ryer Co., 232 Mo.App. 811, 114 S.W.2d 150, cited by plaintiff-appellant. In the Frazier case, there was evidence that the floor of the showroom of defendant's store was not evenly waxed. There was a spot, where plaintiff Frazier fell, that appeared to have been covered by a polishing material that had not been "worked down." And in Douglas v. Douglas, supra, the floor of defendants' towel-supply room had the appearance of being clean and dry, but there was evidence that, at the place where plaintiff fell, there was a greasy film of some slick, "sort of sticky," substance on the floor, and on plaintiff's hands and clothing after she fell—a substance like the undissolved residue of a cleaning agent such as had been used by defendants in mopping their floor. Our instant case is not one

where an invitee has reason to expect a condition of one kind and without warning is met by another.

The judgment should be affirmed. It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.