**L. H. MEYER, Respondent,**

v.

**Ted A. BROWN, Appellant.**

No. 22741.

Kansas City Court of Appeals.

Missouri.

April 7, 1958.

—————◆—————

D. S. Lamm and Lawrence Barnett, Sedalia, for appellant.

Leo J. Harned and George H. Miller, Sedalia, for respondent.

MAUGHMER, Commissioner.

This is a suit for damages arising from alleged fraud and misrepresentation in the sale of a large lot of used storage batteries by defendant to plaintiff. There was a jury verdict for plaintiff in the sum of $2,850. Judgment for such amount was entered. Defendant's motion for new trial was overruled and he appealed.

On this appeal two assignments of error are presented. First, that the Court erred in overruling defendant's motions for directed verdict offered at the close of plaintiff's evidence and filed again at the close of all the evidence. Second, that the Court erred in giving Instruction No. 1.

Plaintiff's petition alleged that on November 15, 1955, he purchased a number of storage batteries from defendant for the sum of $5,750; that defendant represented to plaintiff there were at least 3,000 batteries in the lot; that such representation was false and defendant knew it was false; that plaintiff relied thereon and purchased the batteries upon the assumption that defendant's statements in regard to the number were true; that in truth and fact there were only 1,786 batteries in the lot, and the reasonable value of the shortage (1,214) was $3,000. Defendant's answer was a general denial.

Plaintiff testified that he was 61 years old, had a fourth grade education, and had operated a junk yard outside of Sedalia, Missouri, since 1913. He said he formerly worked for defendant's father and "had done lots of business" with defendant. Ted Brown, the defendant, operated an automotive service business in Sedalia. This business included a machine shop, repair garage and the selling of automobile parts, including batteries. Plaintiff stated that on November 15, 1955, having learned defendant had a stock of used batteries for sale, he visited defendant's place of business for the purpose of trying to buy the batteries. He saw them in defendant's paint and body shop stacked up in a pile approximately 60 feet long, 8 feet high and 6 feet wide; that some of the batteries were so heavy one man could not lift or load them. Plaintiff then had his son Otto come over. They measured the pile and Otto, in defendant's presence, said: "There ain't but about 1,800"; that defendant replied: "There was 2,800 a year ago, and we invoiced them and had 2,800 a year ago, and we have been putting more on the pile ever since; there ought to be 3,000 or 3,500".. Plaintiff said he knew he could get about $2.35 apiece for the batteries and "I just took his word; that was all there was to it". The parties agreed that the sale was consummated about 2:00 or 2:30 p. m. on. November 15, 1955, and at that time plaintiff gave defendant his check in the sum of $5,750, drawn on the Bank of Ionia, located in Benton County, and some miles from Sedalia. On the following day, November 16, 1955, plaintiff testified that they started loading the batteries; that by count the number totalled only 1,784; that on discovery of this fact he looked for defend-

ant but did not find him; that he "told the bank to stop the check, but he had done took the check down that same evening I gave it to him". Plaintiff said defendant told him "lots of times" there were at least 3,000 batteries in the pile.

Otto Meyer, plaintiff's son, 39 years old, said he was present when his father was looking at the batteries; that he "measured the batteries with a yardstick and I figured there was around 18 or 19 hundred, but Mr. Brown said they took inventory a year ago and it was 2,800 then when they took the inventory and he knowed there was more than that, so I didn't argue about it". He said his father ordered two freight cars on the basis of 3,000 batteries, but all were loaded in one car. This witness said he heard defendant say several times "there was 2,800 when they took inventory the last time and he knew there was over 3,000 batteries there now".

Chester Burke helped load the batteries. While the loading was in progress he said he heard defendant and Mrs. Meyer, the plaintiff's wife, arguing about the number of the batteries,—Mrs. Meyer saying there were not 3,000, and defendant saying there were 3,000 or more. Mrs. Meyer testified as to this argument and as to defendant's alleged statements.

Clarence Schnabel, banker at Ionia, stated that on the afternoon of November 15, 1955, defendant called him about the check, said he would bring it down that afternoon; that he did bring it to the bank that afternoon, cashed it and received a bank draft therefor.

Defendant denied making the alleged representations as to the number of batteries and said he sold them to the plaintiff as a pile of batteries.

Defendant contends that his motion for a directed verdict should have been sustained because no submissible case was made. He says that plaintiff had the means readily within reach to determine how many batteries were in the pile; that

plaintiff's son Otto actually did give a most accurate estimate; that plaintiff could have counted the batteries and that under these circumstances plaintiff had no right to rely upon the alleged misrepresentations.

In testing the sufficiency of the evidence to make out a case submissible to a jury upon motion for a directed verdict a plaintiff's evidence must be considered true and the plaintiff given the benefit of every inference of fact which can reasonably be drawn therefrom. Nash v. Normandy State Bank, Mo., 201 S.W.2d 299; Lowry v. Mohn, Mo., 195 S.W.2d 652.

The essential and fundamental elements of an action for fraud have many times been stated by our appellate courts. The rule, as stated, in 37 C.J.S. Fraud § 3, page 215, is as follows: "Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury".

This rule has been approved generally in the following cases: Lowther v. Hays, Mo., 225 S.W.2d 708; Nash v. Normandy State Bank, supra; Wolf v. Kansas City Tire & Service Co., Mo.App., 257 S.W.2d 408; Salmon v. Brookshire, Mo.App., 301 S.W.2d 48. There must be substantial evidence as to each of these essential elements, otherwise a plaintiff is not entitled to go to the jury and a recovery would not be permitted to stand.

It is true, of course, that where a party fails to avail himself of means of knowledge readily within his reach or equally available to him, he cannot effectively complain if he is defrauded. Defendant has invited our attention to some

cases so holding, namely: Weitzman **v.** Weitzman, Mo., 156 S.W.2d 906, involving sale of corporate stock by one brother to another, where each already owned a part of the stock and each had equal opportunity to know its worth. Conklin v. Missouri Pacific R. Co., 331 Mo. 734, 55 S.W.2d 306, turning on the statement of a physician who had been treating plaintiff and where the physician was readily available to the plaintiff, and Davis v. Phoenix Ins. Co., 81 Mo.App. 264, loc. cit. 266, where the court said: "An action for false representation and deceit will not lie where the plaintiff had equal knowledge with the other party as to the subject-matter, or means of knowledge easily within his reach".

But those cases do not fit our case and this rule does not apply where the defects are latent, are not readily discoverable, or are not such as would be encompassed by the doctrine of caveat emptor. We find the following statement in 37 C.J.S. Fraud § 34, pp. 279 and 280: "However, the mere presence of opportunities for investigation will not of itself preclude the right of reliance; and this is especially true where the circumstances were such that a prudent man would not have been put on inquiry, as where positive statements were made in a manner not calculated to cause inquiry, where the relations between the parties were involuntary, where, although it was possible to ascertain the facts, an investigation would have been difficult, or where there was intentional fraud, as where the representations were made for the very purpose of preventing inquiry; * * *

"The right to rely on representations is generally conceded where the hearer lacks equal facilities for ascertaining the truth, as where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain, as where misrepresentations relate to latent defects, where, because of the hearer's ignorance and inexperience, it would be necessary for him to employ a third person to make an examination in order to learn the truth, where the employment of an expert would be required, or where from the circumstances attending the transaction the hearer is compelled to rely on the speaker's statements".

Then there is a line of Missouri cases, commencing with Judd v. Walker, 114 Mo. App. 128, 89 S.W. 558 (approved by the Supreme Court, 215 Mo. 312, 114 S.W. 979) holding the doctrine of caveat emptor does not apply when the vendor makes false statements of fact of his own knowledge, the falsity of which is not palpable to the purchaser, and the purchaser relies thereon. Under such circumstances, the vendor's misrepresentations are not excused. In Kearns v. Sparks, Mo.App., 260 S.W.2d 353, loc. cit. 359, the court quoted with approval the following: " 'The law will not hear the guilty party say, "You were yourself guilty of negligence", or "You ought not to have trusted me" ' ". See, also, McCaw v. O'Malley, 298 Mo. 401, 249 S.W. 41; Cantley v. Plattner, 228 Mo.App. 411, 67 S.W.2d 125. However, the Supreme Court has been careful to point out that each case must be decided upon its own facts.

For the plaintiff to move and count what he thought were some 3,000 batteries, —some heavier than one man could lift,— in defendant's occupied business premises, would have required the expenditure of time and money. The actual number of batteries was a latent fact not readily discoverable by plaintiff and he was not possessed of equal knowledge thereof. Moreover, he had a plain, positive and unequivocal statement and representation from the defendant that there were at least 3,000 batteries in the pile. From the record before us we believe and rule that plaintiff had the right to rely upon the alleged misrepresentations and that a submissible case was made for the jury on each of the essential elements of fraud.

Defendant also argues that by treating the transaction as a contract by keeping

and selling the batteries after discovery of the fraud, plaintiff legally waived his rights under such fraud. We do not believe this plaintiff ever waived by word or act his right to recover damages. This court so ruled a similar question in Burns v. Vesto Co., 295 S.W.2d 576, and on page 579 of that opinion set forth the true rule by quoting with approval the following: "As said in the case of Schwab v. Brotherhood of American Yeoman, 305 Mo. 148, 264 S.W. 690, 692: 'A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part.' Our Supreme Court has also held that: 'Waiver is essentially a matter of intention. * * * Whatever parties do or forbear to do, therefore, their acts or omissions, to be construed as waivers, *must be so manifestly consistent with and indicative of an intention to relinquish the particular right or benefit that no other reasonable explanation of their conduct is possible.*' (Emphasis ours.) Langdon v. Kleeman, 278 Mo. 236, 211 S.W. 877, 878".

We now consider Instruction No. 1, which reads as follows: "The Court instructs the jury that if you find and believe from the evidence that on November 15, 1955 plaintiff and defendant entered into oral negotiations for the sale to plaintiff by defendant of a group of used batteries; and if you further find and believe that in the course of said oral negotiations the defendant represented to plaintiff that there were at least 3,000 batteries in said group; and if you further find and believe that at the time said defendant made such representation, if so, that said representation was false, and known by defendant to be false; and if you further find and believe that plaintiff relied upon such false representation made by defendant, if any, regarding the number of batteries in said group; to the loss and damage of plaintiff then your verdict will be for the plaintiff".

Defendant attacks Instruction No. 1 solely because it did not require the jury to find that plaintiff "had a right to rely upon" the alleged misrepresentation. We, therefore, confine our discussion to that point.

█ A verdict-directing instruction must include all prerequisite factual determinations and leaving one out constitutes a defect which would not be cured by a defense instruction thereon. In Hatfield v. Thompson, Mo., 252 S.W.2d 534, loc. cit. 544, the court quoted with approval from McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37, and as follows: " 'It is, of course, true * * * that an instruction, purporting to cover the whole case and authorize a verdict, is erroneous if it leaves out any facts necessary to be found before the plaintiff is entitled to recover, and that, where an instruction does leave out such an essential fact, the error is not cured by an instruction for defendant requiring a finding of such a fact before recovery can be had against it.' And further: '* * * if the plaintiff's instruction, covering the whole case and authorizing a verdict, does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously or in language which might be misleading, then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite' ". See, also, Banta v. Union Pacific R. Co., 362 Mo. 421, 242 S.W.2d 34, loc. cit. 42.

The case of Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo., 253 S.W. 1006, was based on fraud. The plaintiff's main and verdict-directing instruction in that case was identical to Instruction No. 1 in our case in that it did not require the jury to find that plaintiff had a right to rely upon said representations. On page 1010 and 1011 of the opinion our Supreme Court said: "Another objection to the instruction is that it should

have required the jury to find that the plaintiff had a right to rely upon said representations; that is, that he exercised ordinary diligence in so relying.

"It is true the jury must determine from the facts introduced in evidence whether the party who claims to have been deceived had reason to rely upon the statements made, but that issue would not necessarily be put to the jury in that form.

"The jury were instructed that they were the judges of the credibility of the witnesses and of the weight to be given their testimony, and should take into consideration their character, etc., 'as well as all the other facts and circumstances given in evidence.' By taking into consideration 'all the facts,' the jury would consider the probabilities of the case, the character of the representations, and the circumstances under which they were made, and whether such representations under such circumstances would, without further inquiry, induce and justify belief.

"The instruction required in general terms a finding of every fact necessary to make out a case. If there were facts which the defendant thought justified a more specific direction as to plaintiff's duty to use diligence before trusting defendant, defendant should have asked such an instruction. Nondirection in that respect was not error".

In our case, as in the Monsanto case from which we have just quoted, a credibility instruction was given and, in addition, defendant asked for and the Court gave Instruction No. A, which required a specific finding that defendant "had the right to rely" upon such representations. This amounted to a more specific instruction, which Judge White, in the Monsanto case, suggested that defendant could seek. We believe Instruction No. 1 required in general terms a finding of every fact necessary to make out a case. We rule defendant's

assignment of error as to Instruction No. 1 against him.

We find no reversible error and the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.