Samuel L. CHANEY, Respondent-Plaintiff,

v.

W. D. RAY, Appellant-Defendant.

No. 24159.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1965.

David Waldman, Kansas City, for appellant.

Robert J. Edwards, E. E. Thompson, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff sued defendant for damages, allegedly suffered by reason of plaintiff's reliance on false and fraudulent representations concerning the purchase by plaintiff, from defendant, of a one-eighth interest in an oil lease contract. Plaintiff had a verdict and judgment for $2,500.00, the amount of the original investment, plus $1,262.50 interest. Defendant appeals.

■ Plaintiff was the only witness who testified in the case. Defendant's chief contention is that no case was made. In ruling the sufficiency of the evidence in this case, where plaintiff was the only witness, plaintiff's testimony will be accepted as true and he will be given the benefit of all favorable inferences of fact that may be reasonably drawn therefrom. Meyer v. Brown, Mo. App., 312 S.W.2d 158, 160; McClung v. White, Mo.App., 386 S.W.2d 678, 679. However, if plaintiff's testimony was so contradictory as to be self destructive, without any reasonable explanation of the variance, as in Steele v. Kansas City Southern Railway, 265 Mo. 97, 175 S.W. 177, 181–182, and in Stoll v. First National Bank of Independence, 234 Mo.App. 364, 132 S.W.2d 676, 682, then no case was made because of the absence of evidence of probative value.

Plaintiff testified to the effect that, prior to March 25th, 1954, he was told by Mr. Kandlis, a friend, that Kandlis had previ-

ously invested in an oil venture with defendant; that the investment had been financially satisfactory; that plaintiff, somewhat jokingly, told Kandlis that, if another similar deal arose, he might like to invest. He stated that Kandlis was in the grocery business and that he did not view him as an expert in the oil business; that his only connection with that business was as an investor; that plaintiff was in the insurance business and had no knowledge about leasing oil lands, or about drilling for or production of oil; that Kandlis informed him that defendant was very familiar with and experienced in these matters. He stated that, sometime thereafter, Kandlis told him that defendant had a new venture in the oil business; that, by agreement, Kandlis arranged for plaintiff to meet defendant at the latter's office; that Kandlis and plaintiff met at the defendant's office where plaintiff was first introduced to defendant; that Kandlis then returned to his grocery store and that defendant, who was doing business as Wm. D. Ray Oil Co., and plaintiff, discussed the venture that gives rise to this lawsuit.

Plaintiff stated that defendant told him, in that conversation, that he and his co-investors had an oil well already drilled, that it was a producing well; that it was a producer; that it was producing from 3500 to 3600 barrels per acre; that the money he was putting in was to pay a part of the cost of that original well; that plaintiff was to receive a one-eighth interest in that well; that plaintiff told defendant that he was in the insurance business and that defendant was the oil expert; that defendant stated that he had been working on these leases for several years and that Kandlis had been with him on another venture down there; that he had been working in the area for two or three years; that plaintiff told defendant he wanted to see the site, to see what had been done; that Ray said some of the other investors were going down to see the location, near LeRoy, Kansas, on the following Sunday, March 28th, 1954; that plaintiff and his wife, accompanied by her cousin, Mr. Tuttle, drove down to the location of the well; that Tuttle was in Kansas City, at the time, attending a Chemist's Convention; that Tuttle was a Chemist; that he had had no experience in prospecting, exploring, drilling for or producing oil; that he was invited merely as a guest and in order that the parties might visit while on the trip; that plaintiff never asked Tuttle for an opinion on the investment; that plaintiff took along his "still camera", and took pictures of the machinery, the workmen, the investors, and the general surroundings; that he did that for his own amusement; that he talked with various persons, including the driller, Hardesty, who also had an interest in the venture; that the well was not pumping; that he was told that the workmen were then engaged in the process of "fracturing" the well (a procedure whereby the rock strata above the oil or gas is broken, so that oil and gas underneath the rock formation may escape, through cracks, into the main bore of the well); and that he, plaintiff, knew nothing about this procedure.

He stated that, while on this trip to see the site of the drilling activities, he talked to people there about this matter but that he did not rely on the advice of anyone that he saw regarding the production of oil at this location, or the future prospects with relation thereto; that he believed what defendant told him, in his office, that a well was then completed and had a production capacity of from 3500 to 3600 barrels per acre; that he relied on defendant's statements as being true and as coming from an expert in that field; that he made his investment because of his reliance upon what defendant told him.

There was testimony to the effect that the well was not a producer, not financially profitable, as had been represented; that plaintiff received no money from his investment; and that defendant promised, and failed, to return his investment money.

Exhibit No. 2 was admitted in evidence. It purports to be an agreement between de-

fendant, first party, and Charles Hardesty and Harold Kramer, referred to therein as contractors. By it, contractors agreed to drill oil wells on the farm of A. A. Ray under stated conditions and for stated considerations. It is signed by defendant and six others, including plaintiff. It bears date of March 4th, 1954.

Exhibit No. 3 is a typewritten "agreement" signed by defendant and all of the other parties who signed Exhibit No. 2. It is dated March 27th, 1954. Each of the six signers, other than defendant, agreed to pay two-twelfths of the total stated cost of drilling four oil wells located on the land described in Exhibit No. 2.

Exhibit No. 1, introduced in evidence is a cancelled check for $2500.00, drawn by plaintiff and made payable to W. D. Ray Oil Co. It bears the endorsement of "W. D. Ray Oil Co., by W. D. Ray". It is dated March 30th, 1954. On the face of the check appears: "for one eighth interest A. A. Ray Oil Lease, in Coffey County, Kansas". Plaintiff stated that he gave it to defendant on account of the lease herein mentioned.

Plaintiff offered in evidence his Exhibit No. 4, a geological laboratory report on the production potentiality of the well but it was not admitted.

This case is based on fraud. In Lowther v. Hays, Mo., 225 S.W.2d 708, 713, the Supreme Court said: " 'Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity *or ignorance of its truth*. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon' ". (emphasis ours).

The Court further stated that fraud is never presumed but that each essential element thereof must be established by substantial evidence.

From the above stated facts, as condensed from the record, it is readily apparent that there is substantial proof of every essential element of fraud as defined by the Court. Plaintiff told defendant, when they first met, that he knew nothing about the oil business and defendant told plaintiff that he was experienced. Plaintiff had a right to believe him and rely on his representations. Nichols v. Hendrix, Mo.App., 312 S.W.2d 163, 165–166; Meyer v. Brown, Mo.App., 312 S.W.2d 158, 161; Schechter v. Brewer, Mo.App., 344 S.W.2d 784, 788. Plaintiff stated that defendant told him the well was completed, that it was a producer, that it would produce from 3500 to 3600 barrels per acre. The jury believed plaintiff's unchallenged testimony, and it had every right to believe it. There were no such inconsistencies in plaintiff's testimony as to support a ruling that his testimony is without probative value. McClung v. White, supra. There is no substantial evidence tending to prove that he relied on his own independent investigation and knowledge in making his investment, or that he was influenced to invest by reason of the advice or influence of persons other than defendant.

Defendant contends that plaintiff's verdict directing instruction is prejudicially erroneous because of failure to require the jury to find all of the elements of actionable fraud. The instruction is not set out in the brief and the point made is not reviewable. Miller v. Wilson, Mo.App., 381 S.W.2d 31, 37. However, the instruction contains no misdirection and requires a finding of facts from which the jury could find that every element of actionable fraud had been established by the evidence. The point is ruled against defendant; Burns v. Vesto Co., Mo.App., 295 S.W. 2d 576, 578.

Defendant's criticism of instruction No. 3 is also rejected. The instruction is not set out in the brief; it is supported by the evidence; and it is not prejudicially erroneous as affecting the merits of the case.

Papen v. Friedmeyer, Mo.App., 255 S.W.2d 841, 846.

Defendant complains of error because of the Court's refusal to give his offered instructions A and B. Other instructions given by the Court fully covered the issues mentioned in A and B. The Court committed no error in so ruling.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.