James T. CRUES,
Appellant/Cross-Appellee,

v.

KFC CORPORATION,
Appellee/Cross-Appellant.

Nos. 82–2050, 82–2085.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1983.

Decided March 13, 1984.

Rehearing and Rehearing En Banc
Denied April 13, 1984.

Law Offices of Theodore F. Schwartz, Theodore F. Schwartz, Barry S. Ginsburg, Clayton, Mo., R.J. Slater, Padberg, McSweeney, Slater, Merz & Reid, St. Louis, Mo., for James T. Crues.

Shepherd, Sandberg & Phoenix, P.C., John C. Shepherd, John S. Sandberg, Richard L. Prebil, St. Louis, Mo., for appellee/cross-appellant KFC Corp.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

James T. Crues obtained a judgment for $450,000 on his claim that KFC Corporation had fraudulently induced him to purchase an H. Salt Seafood Galley restaurant franchise. KFC appeals this judgment, arguing that Crues failed to establish all of the elements of fraud and to prove damages, and that it is entitled to judgment as a matter of law. KFC also claims error in the jury instructions, in reception of evidence and in rulings concerning plaintiff's final argument. In turn, Crues appeals the district court's granting of KFC's motions for a directed verdict on the issue of punitive damages and for judgment notwithstanding the verdict on its claim for royalties. We conclude that Crues established a submissible case of fraud but that the district court erred in instructing the jury and in directing a verdict on the issue of punitive damages. We reverse and remand for retrial. 546 F.Supp. 217.

Crues became interested in obtaining an H. Salt Seafood Galley restaurant franchise from KFC in early 1976. On May 13, 1976, he received from KFC a package of materials directed to prospective H. Salt franchisees. Crues submitted an application to KFC in late June, 1976, and signed a franchise option agreement dated July 19, 1976. KFC accepted the option on August 27, 1976. It notified Crues on November 5, 1976, that his site had been approved, and requested that he return further forms when he had purchased the property. On December 3, 1976, he was allowed additional time to negotiate for the location.

According to several KFC representatives, the business in the various Seafood Galleys took a turn for the worse in late November, 1976. On February 7, 1977, KFC sent Crues a certified mail letter informing him that sales in the St. Louis stores were disappointing and that sales in Pittsburgh were a little better but not what KFC expected or required. The letter continued, "As a result, the company is not going to build anymore Galleys this fiscal year. Any additional builds will depend on our ability to improve sales or somehow get a better balance between investment and return." Finally, the letter advised: "In view of the current Galley performance data, you may want to reconsider starting construction on your unit on Grand in St. Louis."

Crues signed a construction contract on May 18, 1977, and construction began in the summer. The restaurant opened for business on November 9, 1977. On January 7, 1978, KFC sent him fully executed copies of the franchise agreement, which was effective as of November 9, 1977, for a period of twenty years with a four percent royalty rate.

By the time the case was tried in 1982, Crues's Seafood Galley and two located in California were the sole remains of the H. Salt Seafood Galley project.

Crues brought this action, claiming that KFC had induced him to purchase the H. Salt franchise through fraudulent misrepresentation. The materials that KFC provided to potential franchisees included the following information:

The H. Salt Seafood Galley concept is the result of two years of research. In addition, more than a year of actual operating experience was gained in company-owned H. Salt Seafood Galley restaurants located in Pittsburgh, Atlanta, Dallas and Houston....

The company intends to expand its own H. Salt Seafood Galley operations with the firm conviction that the quick service seafood restaurant will hold an important place in the future of America's food service industry. This conviction is based, in part, on these facts:

. . . .

Actual market experience has shown that the H. Salt Seafood Galley is an efficient, high volume profit producer.

The primary issue submitted to the jury was whether KFC fraudulently misrepresented to Crues "that the H. Salt Seafood Galley restaurant concept, after testing and research, was an efficient, high-volume profit producer."

The jury found for Crues, awarding him $450,000 in damages. This exceeded the prayer of $281,501 in the complaint, but the court permitted amendment of the complaint after trial. The district court directed a verdict for KFC on the issue of punitive damages, overruled KFC's motion for a new trial, and entered judgment notwithstanding the verdict in favor of KFC on its claim for royalties in the amount of $18,-154.37.

## I.

█ KFC argues that the district court should have granted its motion for a directed verdict on the fraud claim because Crues failed to establish all of the elements of a fraudulent misrepresentation action under Missouri law. In *Slater v. KFC Corp.*, 621 F.2d 932 (8th Cir.1980), which also involved the Seafood Galley, we enumerated those elements:

(1) a representation;

(2) its falsity;

(3) its materiality;

(4) the speaker's knowledge of its falsity or ignorance of its truth;

(5) his intent that it should be acted upon by the person and in the manner reasonably contemplated;

(6) the hearer's ignorance of its falsity;

(7) his reliance on its truth;

(8) his right to rely thereon; and

(9) the hearer's consequent and proximate damage.

*Id.* at 936. *See also Schimmer v. H.W. Freeman Const. Co.*, 607 S.W.2d 767, 769 (Mo.App.1980); *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 634 (Mo.App.1980).

The standards for granting a directed verdict are the same under both federal and Missouri law. *Hladyshewski v. Robinson*, 557 F.2d 1251, 1252 (8th Cir.1977). We have outlined these standards as follows:

[A] directed verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.

*Dace v. ACF Industries, Inc.*, 722 F.2d 374, 375 (8th Cir.1983) (quoting *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir.1975)); *Hladyshewski*, 557 F.2d at 1252. In *Dace* we further explained that we must

(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

Missouri decisions announce similar principles. *Bayne v. Jenkins*, 593 S.W.2d 519, 521 (Mo.1980) (en banc); *Strebler v. Rixman*, 616 S.W.2d 876, 877 (Mo.App.1981). Under these standards,[1] we shall examine each element of the fraudulent misrepresentation action to determine whether the district court correctly denied KFC's directed verdict motion.

█ (1) KFC argues that the statement submitted to the jury that the Galley "is an efficient, high volume profit producer" is a

1. Because the standards are the same, we need not agonize over whether we apply the federal or state standard. In *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 158 (8th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978), we stated that it was the state standard being applied in such circumstances, and in *Farner v. Paccar*, 562 F.2d 518, 522 (8th Cir.1977), we stated it was the federal standard. In *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 444–45, 79 S.Ct. 921, 926–927, 3 L.Ed.2d 935 (1959), the Supreme Court pointed to troublesome questions as to whether the state or federal standard should be applied, but, because the standards were the same, declined to reach the issue. We believe this is the preferable conclusion. If presented in some future case, the issue can be explored. *See also* 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2525 at 547–54 (1971).

statement of opinion, puffing or value, which is not an actionable representation of fact because it relates to terms of degree capable of different interpretations. *Carrier Corp. v. Royale Investment Co.,* 366 S.W.2d 346, 350 (Mo.1963); *Lowther v. Hays,* 225 S.W.2d 708, 714 (Mo.1950). The materials that KFC sent to Crues listed the statement, however, as one of the "facts" upon which it based its "firm conviction that the quick service seafood restaurant will hold an important place in the future of America's food service industry." Moreover, KFC representatives testified that the statement was a fact. James Crivits, who as Manager of the Retail Venture Company had headed the marketing operations for non-chicken businesses at KFC, testified that the statement was based upon experience and that it was true at the time it was made. Crivits' testimony was confirmed by Theodore Kurilec, former franchise sales representative for the H. Salt Galley. Kurilec testified that the statement was based on actual store performance and the design of the restaurants.

■ (2) KFC argues that the truth or falsity of a representation must be determined as of the time it was made and acted upon by the hearer, *Hunter v. Roberts,* 267 S.W.2d 368 (Mo.App.1954); *Powers v. Shore,* 248 S.W.2d 1 (Mo.1952), and that the statement at issue here was true at the time KFC made it and Crues acted upon it. The "efficient high volume profit producer" statement was made to Crues on May 13, 1976, when he received the franchise package from KFC. When Crues acted upon the statement is not this clear. Crues submitted an application in late June, 1976. The franchise option agreement that KFC sent Crues was dated July 19, 1976. Crues completed the option agreement, and KFC accepted it on August 27. Crues then obtained approval of his site November 5, and signed a construction contract May 18, 1977. On January 7, 1978, KFC sent Crues fully executed copies of the franchise agreement, effective as of November 9, 1977, the day the restaurant opened.

Kenneth Everett Nunn, a security dealer active particularly in the fast-food franchise area, testified after analyzing Seafood Galley sales figures for eight of the stores that there was a substantial decline in sales in the year ending June 30, 1976, and that there was then something seriously wrong with the Seafood Galley concept. In Nunn's opinion, all eight of the restaurants were "in serious trouble" at that time. Rebecca Enders, who had been a franchise sales representative for the Seafood Galley program, and Richard Sivewright, Vice President and General Manager of H. Salt, testified that by late November, 1976, the Seafood Galleys were in serious trouble, with sales substantially down. In view of the evidence, we conclude that it was for the jury to determine whether false statements were made, whether they were false when Crues acted upon them, and the underlying issue of whether he acted upon any such representations in June, July, August or November 1976, May 1977 or at some other time.

■ (3) KFC next argues that the statement was not material because Crues would have acted in the same manner even had the statement been deleted. A statement is deemed material "if it relates directly to the matter in controversy and is of such a nature that the ultimate result would not have followed if there had been no representation, or *if the one who acted upon it had been aware of its falsity."* *Schoen v. Lange,* 256 S.W.2d 277, 281 (Mo. App.1953) (emphasis supplied). The record reflects adequate evidence, including Crues's direct testimony on that point, from which a jury could conclude that Crues would have acted differently had he known the statement to be false.

■ (4) KFC contends that no evidence existed from which a jury could find that KFC had any knowledge of the statement's falsity. KFC argues that the only evidence from KFC employees showed that sales were good or excellent in the summer of 1976, and especially good in St. Louis. The record reveals, however, that the responsible officials at KFC received sales figures

weekly. Rebecca Enders received sales information on the Galleys so that she could share it with prospective franchisees. Edward Chambers, Vice President of Finance and Control at KFC, also had sales figures. He testified that "operations people" would have looked at the sales and profit and loss statement. In view of Nunn's testimony that the decrease in sales for the quarter ending June of 1976 was discoverable, and in view of the uncontradicted testimony of the serious problems developing by November, 1976, the issue of knowledge of falsity was one to be determined by the jury.

■ (5) KFC argues that there was no proof that it intended Crues to rely on the isolated statement that the Galley was "an efficient high volume profit producer." It points to the many warnings of risks and dangers given in the pro forma and other documents. The statement, though, was included in the package of materials designed by KFC to stimulate sales to prospective franchisees. While the materials contained disclaimers, the full context and the circumstances under which the statement was made rendered the evidence sufficiently in conflict to require a jury determination.

■ KFC does not argue the issue of whether Crues was ignorant of the statement's falsity.

■ (7) KFC argues that there was no evidence that Crues relied on the claimed misrepresentation. Crues testified, however, that he received the materials from KFC and reviewed the pro forma. Accompanied by KFC sales representative Kurilec, he took the materials to the bank to meet with his banker, John Caby. Caby scribbled some figures and calculations on the pro forma and used the cost figures in the pro forma to calculate the required loan. Crues also testified that he relied on all of the materials furnished. Even though Crues's testimony may be somewhat inconsistent, the testimony was sufficient to support a finding of reliance.

■ (8) KFC maintains that there was insufficient evidence to prove that Crues had the right to rely upon the representation. KFC specifically points to various warnings in the brochure, the actual data in the pro forma, Crues's failure to inquire as to further sales data, and the letter of February 7, 1977, which advised him to "reconsider." KFC contends that full information as to the Seafood Galley project was reasonably available and that Crues failed to use ordinary care in not availing himself of such knowledge. *Meyer v. Brown*, 312 S.W.2d 158, 160 (Mo.App.1958).

The evidence to which KFC points, however, demonstrates at best that there was conflicting proof as to Crues's right to rely. Crues adduced evidence to show that KFC had vastly superior knowledge, did not inform him that its sales information had changed, and later bolstered the original representation by telling him that business in the stores was "great" and that the program "was doing fantastic." The letter of February 7, 1977, not only advised Crues to "reconsider" but also contained encouraging information. Richard Sivewright admitted that the letter failed to mention KFC's decision not to build any more company-owned stores and to halt issuing any more franchises. Crues contends that since he had no means to acquire knowledge of the truth, he had a right to rely upon KFC's representations. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 82 (Mo.1967); *Shechter v. Brewer*, 344 S.W.2d 784, 788 (Mo.App.1961). We conclude that the conflicting evidence required a jury determination.

■ (9) Crues sought damages under the "benefit of the bargain" measure, i.e., the difference between the actual value of the property and what its value would have been if it had been as represented. *Fong v. Town & Country Estates, Inc.*, 600 F.2d 179, 182 (8th Cir.), *cert. denied*, 444 U.S. 942, 100 S.Ct. 298, 62 L.Ed.2d 309 (1979); *Auffenberg v. Hafley*, 457 S.W.2d 929, 937 (Mo.App.1970). KFC contends that Crues failed to prove either end of the "benefit of the bargain" measure. Nunn testified, however, that the actual value of the franchise without advertising support or clus-

tering would be zero; the business would have value only as a stand-alone restaurant. Another expert, Leroy Grossman, testified that, assuming a certain level of sales and profit for a given period, the present value of a business would be approximately $293,000. KFC points to other evidence and argues that neither Nunn nor Grossman testified directly as to the actual or represented value of Crues's franchise specifically. The evaluation of the experts' opinions and the application of evidence as to their underlying assumptions, however, were matters for the jury. We simply conclude that there was sufficient evidence from which the jury could find both ends of the "benefit of the bargain."

█ We are not persuaded by KFC's argument that Crues's damages were solely anticipated profits, which are not recoverable under Missouri law unless there is proof of income and expenses prior to the misrepresentation. *Rich v. Eastman Kodak Co.*, 583 F.2d 435, 437 (8th Cir.1978). Generally, anticipated profits "are too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery." *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo.1968). KFC contends that since Crues's business was new, without a history of income and expenses, recovery of anticipated profits would be too speculative. In this case, however, Crues was claiming the benefit of the bargain, not anticipated profits, as his damages; proof as to "anticipated profits" was admitted as an evidentiary foundation for expert testimony concerning the value of the franchise as represented. There was ample evidence, including the data underlying the pro forma and the actual experience of other H. Salt Seafood Galleys, from which to draw a "rational estimate" of anticipated profits. John Caby testified that he used such data in computing Crues's loan. *See Coonis v. Rogers*, 429 S.W.2d at 714.

█ KFC also argues that the evidence was insufficient to show that the damages stemmed from the alleged misrepresentation, given the time that elapsed and events that occurred between the misrepresentation and the opening of Crues's Seafood Galley. The record, however, shows sufficient evidence from which a jury could ascertain a proximate causal connection between the misrepresentation and damages.

Having examined KFC's arguments with respect to each element of fraudulent misrepresentation, we conclude that the district court properly denied KFC's motion for a directed verdict because the evidence was sufficient to permit submission of the fraud issue for jury determination.

## II.

█ KFC raises numerous arguments that the district court should have ordered a new trial. We conclude that one of those contentions, that the jury should have been instructed as to whether Crues used ordinary care in relying upon KFC's representations, justifies a new trial. In its instructions to the jury, the district court listed among the elements that the jury would have to believe before rendering a verdict for Crues on the fraud claim: "Fifth, Plaintiff relied on the representation in making the purchase [of the H. Salt franchise]." The court rejected KFC's proffered instruction, which tracked the language of Missouri Approved Instruction (MAI) 23.05: "Fifth, plaintiff relied on the representation in making the purchase, *and in so relying plaintiff used ordinary care.*" (Emphasis supplied.)

Because there was sufficient evidence to place into issue Crues's use of ordinary care in relying on the representations, the court erred in failing to instruct on this issue. *But see Vinyard v. Herman*, 578 S.W.2d 938, 940 (Mo.App.1979) (where confidential relationship, plaintiff has right to rely); *Bowers v. S–H–S Motor Sales Corp.*, 481 S.W.2d 584, 589 (Mo.App.1972) (circumstances did not raise issue of right to rely). We have frequently said that district courts in this circuit are not bound to use the Missouri Approved Instructions. *Hrzenak v. White-Westinghouse Appliance Co.*, 682 F.2d 714, 720 (8th Cir.1982). Their duty is satisfied if the jury instructions as

a whole fairly and adequately set forth the law applicable to the case. *Des Moines Bd. of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983); *Ybarra v. Burlington Northern, Inc.,* 689 F.2d 147, 154 (8th Cir.1982). If the district court fails to instruct on a controverted material issue, it errs and we must determine whether the error was prejudicial. *McGowne v. Challenge-Cook Bros., Inc.,* 672 F.2d 652, 663 (8th Cir.1982). Whether Crues used ordinary care in relying on the representations is a substantive issue that has been recognized by Missouri courts. *John T. Brown, Inc. v. Weber Implement & Automobile Co.,* 260 S.W.2d 751, 757 (Mo.1953); *Orlann v. Laederich,* 338 Mo. 783, 791, 92 S.W.2d 190, 194 (1936); *Meyer v. Brown,* 312 S.W.2d 158, 160–61 (Mo.App.1958). As we have observed, MAI 23.05 specifically includes this language.

The evidence in this case makes this issue most critical. In particular, the letter of February 7, 1977, which advised Crues to "reconsider," could support a finding that Crues failed to use ordinary care and hence had no right to rely. Several KFC representatives, and even Crues himself, testified that he had been advised to consider opening a Kentucky Fried Chicken franchise instead of the Seafood Galley. Without the full instruction, the jury might well have rendered a verdict for Crues even though it believed his reliance and his decision to plunge ahead to be foolish and unreasonable. Portions of the February 7 letter, on the other hand, could be construed as reassuring Crues, and a jury could conclude that he did use ordinary care. The evaluation of evidence on this contested issue was for the jury, and the court should have instructed it as to Crues's duty to use ordinary care in relying upon the representation. Because the court erred in omitting an instruction on this issue and because KFC Corporation was prejudiced thereby, we reverse and remand for retrial of the fraud claim.

KFC's other arguments in support of a new trial can be addressed briefly. KFC argues that evidence of Crues's investment of his life savings into the franchise should not have been admitted and that references made to such life savings should not have been permitted in the final argument of Crues's counsel. The district court properly admitted the evidence in a limited manner on cross-examination as relevant to the issue of reliance. KFC did not object to the final argument on this evidence, and we cannot say that the district court abused its discretion in refusing to grant a new trial on the basis of this argument. *Roberts v. Hollocher,* 664 F.2d 200 (8th Cir.1981). We have considered KFC's further arguments for a new trial based upon a "disjointed trial," the jury instruction as to the time of measuring damages, and the refusal of the district court to give the jury "withdrawal" instructions, and have found all these arguments to be without merit.

### III.

Crues maintains that the district court erred in directing a verdict for KFC on the issue of punitive damages. We have already discussed the standards to be applied in determining whether a directed verdict was proper, *supra,* pages 1148–1149.

Crues argued to the district court that the evidence supported submission of the punitive damages issue to the jury because

> [it] revealed that KFC made representations to Crues to induce him to purchase the franchise. These representations were not true at the time they made them and the evidence revealed that KFC knew they were not true. These representations by KFC were made intentionally with the wrongful purpose of inducing Crues to believe that the H. Salt Seafood Galley was a high volume profit producer.

*Crues v. KFC Corp.,* 546 F.Supp. 217, 219 (E.D.Mo.1982) (quoting Plaintiff's memorandum in support of motion for partial new trial, p. 1147). The district court agreed that the evidence supported such a showing, but considered the showing to be no more than that of the elements of the intentional tort of fraudulent misrepresen-

tation. Thus, the district court concluded that a directed verdict was proper because the evidence was insufficient to support the additional element of legal malice required for punitive damages under Missouri law.

In Missouri, actual malice, *i.e.*, motivation by spite or ill will, is not a prerequisite to punitive damages; legal malice will suffice. *Armstrong v. Republic Realty Mortgage Corp.*, 631 F.2d 1344, 1352 (8th Cir.1980); *Pollock v. Brown*, 569 S.W.2d 724, 733 (Mo.1978) (en banc). The test to be applied in determining legal malice, as stated by the Missouri Supreme Court in *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719, 722 (Mo.1966), is whether the defendant did a wrongful act intentionally and without just cause or excuse. "This means that defendant not only intended to do the act which is ascertained to be wrongful but that he knew it was wrongful when he did it." [citation omitted]

Thus, evidence that supports the elements of an intentional tort may also support the legal malice required for punitive damages. *See, e.g., Central Microfilm Service v. Basic/Four Corp.*, 688 F.2d 1206, 1221 (8th Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983) (punitive damages under Missouri law supported by evidence in fraudulent inducement action); *Ross v. Holton*, 640 S.W.2d 166, 173–74 (Mo.App.1982) (evidence showing elements of intentional interference with contract also sufficient to show legal malice).

In the present case, the district court determined that there was sufficient evidence to submit to the jury the issue of fraudulent misrepresentation, which encompasses the elements of knowledge and intent. Having submitted the fraud issue to the jury, the district court ruled inconsistently in finding insufficient evidence to support legal malice. *See Young v. Mercantile Trust Co. Nat'l Ass'n*, 552 S.W.2d 247, 251 (Mo.App.1977) (directed verdict on punitive damages improper where evidence sufficient to submit issue of actual damages stemming from wrongful act). Given sufficient evidence to support a finding of legal malice, we have recognized that whether and in what amount punitive damages should be awarded are questions that rest peculiarly in the discretion of the jury, *Fong*, 600 F.2d at 183, and the jury's decision will stand unless the award is "irrational and excessive," *Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 586 (8th Cir.1981). We conclude that the district court erred in directing the verdict for KFC as to punitive damages. While we are remanding for a new trial on other grounds, the issue of punitive damages, because it is so interwoven with the substantive merits of the fraud claim, requires retrial of all the issues as well. *McDonald v. Johnson & Johnson*, 722 F.2d 1370 (8th Cir.1984).

### IV.

Crues also contends that the district court improperly granted KFC's motion for judgment notwithstanding the verdict as to KFC's counterclaim for royalties. Crues does not dispute the evidence that under the terms of the franchise agreement he was to pay KFC four percent of his gross sales as royalties and that the unpaid royalties totalled $18,154.37. Instead, Crues argues that he had no obligation to pay royalties because of KFC's alleged fraud and because use of the trademark for which the royalties were to be paid had no value.

Under Missouri law, "[a] victim of fraud may elect to affirm the contract and assert damages or may repudiate the transaction and be restored to status quo—but not both." *Stadium Bank v. Milton*, 589 S.W.2d 338, 344–45 (Mo.App.1979). In this case Crues has elected to affirm the contract and sue for the "benefit of the bargain." Having chosen this remedy, he cannot now defend against the royalty counterclaim by essentially disaffirming the contract. *See Auffenberg v. Hafley*, 457 S.W.2d at 935. Since the evidence was undisputed, the district court properly rendered judgment notwithstanding the verdict. *See Richardson v. Missouri Pacific R.R. Co.*, 677 F.2d 663, 665–66 (8th Cir. 1982).

**1154**

In conclusion, we hold that there was sufficient evidence from which the jury could be allowed to determine the issues of fraudulent misrepresentation and damages arising therefrom. The district court properly granted KFC's motion for judgment notwithstanding the verdict on its counterclaim for royalties. We conclude, however, that the district court erred in failing to instruct the jury as to Crues's duty to use ordinary care in relying upon KFC's representation, and that the court should have permitted the issue of punitive damages to be decided by the jury. Accordingly, we remand for retrial of Crues's fraudulent misrepresentation claim and determination of actual and punitive damages.